UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23-CR-207 JAR |
| CARRIE LITTLE, | ) |
| Defendant. | ) |

## GOVERNMENT'S TRIAL BRIEF

COMES NOW the United States of America, by and through Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Dianna R. Collins, Assistant United States Attorneys for said District, and submits its trial brief, outlining the anticipated testimony of witnesses and evidentiary issues in the upcoming trial of the above-captioned matter.

## PROCEDURAL HISTORY

Carrie Little (hereafter referred to as the defendant) was arrested by Federal Bureau of Investigation Task Force Officers on April 27, 2023. After a lengthy investigation, a Grand Jury sitting in the Eastern District of Missouri issued an Indictment charging the defendant with Count One: Sex trafficking of M.B., in violation of Title 18, United States Code, Section 1591(a)(1); Count Two: Enticement of M.B. to engage in prostitution, in violation of Title 18, United States Code, Section 2422(b); Count Three: Using the internet to promote prostitution, in violation of Title 18, United States Code, Section 1952(a)(3). All offenses were alleged to have occurred in the Eastern District of Missouri.

## STATEMENT OF FACTS

The United States expects the evidence will show that the defendant, Carrie Little is a 44-year-old woman and is a resident of Saint Louis County, Missouri.   Beginning at least in 2015, when Defendant Little was released from the Vandalia Correctional Center located in Vandalia, Illinois, Defendant Little set up brothels at her primary residence(s) and at the In-Town Suites located at 9067 Dunn Rd., Hazelwood, MO.

Defendant Little's brothels provided commercial sex services with adult and minor females. Patrons would engage in sex in exchange for money.   Defendant Little directly recruited females or had family members and friends recruit females for her operation. The Government expects five adult women to testify that they were recruited and managed by Defendant Little.   Four adult women will testify that they met Defendant Little in various ways, however their testimony of Defendant Little's trafficking operation is strikingly similar.

The women will testify that once a female agreed to work for Defendant Little, the Defendant either provided a place for the female to live or required the female to be available 24 hours a day.   Defendant Little either took photos of the females or directed the taking of photos to be posted online.   These photos were taken with Defendant Little's smartphone.   Defendant Little posted the majority of the online ads of the females.   Once the ads were posted on-line, Defendant Little took phone calls to arrange dates for the females and set prices for the sex services that were requested.   The majority of the sex service requests were in-calls, meaning the men requesting services drove to the brothels to meet the females. After receiving sex services, men either directly paid Defendant Little or paid the females who were required to give the money to Defendant Little. Defendant Little kept the majority of the proceeds from the sex services. The women will also testify that Defendant Little routinely threatened them, openly

2

talked in detail about her criminal history, bragged about associations with gang members and incarcerated people with the intention to intimidate and instill fear.

The Government expects to call Defendant Little's daughter, M.B. M.B. will testify that she was introduced to her mom's business as young as age 12. At this early age, her mom taught her and instructed her how to take pictures of females in sexually suggestive poses and to post these pictures online. By age 14-15, Defendant Little taught M.B. how to answer phone calls in response to the posted ads and to make appointments for the females. Ultimately, when M.B. was 17 years old, Defendant Little recruited and persuaded M.B. to engage in prostitution.

The Government expects to call Forensic Examiner James Karase who performed the forensic analysis of Defendant Little's cellular phone. Karse will testify as to the photos and screen shots found on Defendant Little's electronic device. Karse will testify about hundreds of photos of females dressed in sexually explicit ways and identifying photos of Johns were located on Defendant Little's cellular phone. Additionally, Karse will testify that screen shots discussing prostitution pricing and selection of females with Johns were located.

The Government has provided notice of two experts. The Government expects Ms. Clayborn to explain to the jury common phrases, ideology, and methods used in the prostitution business. The Government expects Mr. Harper to explain the ways that victims who have been sexually abused, assaulted, and exploited tend to react and cope during and after these experiences. Specifically, the dynamics around the disclosure of abuse and reporting behaviors, including gradual and delayed disclosures, minimization and recantation; victim behavior at the time of abuse/assault/exploitation; victim behavior after abuse/assault/ exploitation and/or disclosure; as well as the dynamics of abuse/assault/exploitation when the perpetrator occupies a

3

position of trust.

Lastly, the Government expect to call Detective Jerry Cochran and Detective Stephanie Stoehner.  Detective Stoehner will introduce statements of Defendant Little through jail tapes and videos obtained from Lincoln County Correctional Facility.  Detective Cochran will explain the lengthy investigation into Defendant Little's prostitution organization.  Detective Cochran will also explain corroborating evidence such as financial records from Cash App and Simmons Bank, emails accounts from Yahoo, Inc. and Google, Inc., photos from SkiptheGames.com, transportation records from Lyft, and records from Charter Communications.

## LEGAL ANALYSIS

**A.     Sex Trafficking of a Minor (Count One)**

      i.      Statute

Title 18, United States Code, Sections 1591(a)(1).

Section 1591(a)(1) provides:

> Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).
>
> As to knowledge of a minor's age, Section 1591(c) further provides:
>
> In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited,

4

>enticed, harbored, transported, provided, obtained or maintained, the Government need not prove that the defendant knew that the person had not attained the age of 18 years.

See, 18, U.S.C. § 1591(a)(1).

>  ii.    Elements

To sustain its burden of proof, the United States must establish the following:

>**First:** the defendant knowingly recruited, enticed, harbored, transported, provided, obtained or maintained by any means any individual; and
>
>**Second:** that the defendant did so knowing or in reckless disregard of the fact that the individual had not attained the age of 18 years and would be caused to engage in a commercial sex act; and
>
>**Third**: that the defendant's acts were in or affected interstate or foreign commerce.

See, e.g., United States v. Jungers, 702 F.3d 1066, 1069 (8th Cir. 2013); United States v Garcia-Gonzalez, 714 F.3d 306, 312 (5th Cir. 2013); United States v. Chappell, 665 F.3d 1012, 1014 (8th Cir. 2012).

Title 18, United States Code, Section 1591(a) was passed by Congress as part of the Trafficking Victims Protection Act of 2000("TVPA").  See, Pub. L. No. 106-386, 114 Stat. 1464 (2000). "The TVPA criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain." United States v. Evans, 476 F.3d 1176, 1179 (11th Cir. 2007). In passing the Act, "Congress recognized that human trafficking, particularly of women and children in the sex industry, is a modern form of slavery, and it is the largest manifestation of slavery today." Evans, 476 F.3d at 1179 (discussing legislative history of Section 1591).

>  i.    **Recruit, Harbor, Transport, Provide or Obtain**

5

In considering whether a defendant knowingly recruited, enticed, harbored, transported, provided, or obtained a person, the jury may use the ordinary, everyday definitions of those terms. See, Smith v. United States, 508 U.S. 233, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning"). Recruit means to seek the services of or to enroll in support of oneself or others. To entice means to attract or lure using hope or desire. To harbor a person means to give or afford shelter or refuge to that person. To transport means to transfer or convey from one place to another. Provide means to supply or make available. To obtain means to gain, acquire or attain. See, The American Heritage Dictionary of the English Language, New College Edition (1976).

    **ii.  Acting Knowingly or Acting in Reckless Disregard**

In determining whether the defendant knew or acted in reckless disregard of the fact that a victim had not attained the age of 18, a defendant has a reasonable opportunity to observe the victim if the defendant had an in-person, face-to-face interaction, with the victim. See, United States v. Booker, 447 Fed. Appx. 726, 727 (7th Cir. 2011); United States v. Robinson, 702 F. 3d 22, 35 (2nd Cir. 2012).

In the present case, the defendant gave birth to the Minor #1 on July 5, 20--. The defendant was the primary parent and raised Minor #1 as a single mom from the day Minor #1, throughout an unrelated incarceration, and up to the day of arrest in this matter. The defendant was well aware of daughter's age.

    **iii. Commercial Sex Act**

The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person. The thing of value may be money or any other tangible or

6

intangible thing of value that may be given to or received by any person, regardless of whether the person who receives it is the person performing the commercial sex act.    18 U.S.C. § 1591(a)(1) and (c)(1).

### iv. Interstate Commerce

Courts have held that the internet and cell phones are a means or facilities of interstate commerce.  See, e.g., United States v. Barlow, 568 F.3d 215, 220 (5th Cir. 2009) ("it is beyond debate that the Internet and email are facilities or means of interstate commerce"); United States v. Giordano, 442 F.3d 30, 39-40 (2nd Cir. 2006) (cell phones are a facility or means of interstate commerce.  In United States v. Corum, 362 F.3d 489, 493 (8th Cir. 2004), the Court of Appeals for the Eight Circuit held that "it is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce.  See also, United States v. Evans, 476 F.3d 1176 (11th Cir. 2007) (finding that the interstate commerce element was met in a Section 1591(a) case where no prostitutes crossed state lines but hotels, phones, and condoms manufactured out of state were involved and the United States does not need to prove that the defendant knew his actions were in or affecting interstate commerce); United States v. Myers, 430 Fed. Appx. 812, 816 (11th Cir. 2011) ("knowingly" does not modify the interstate commerce prong).

### v. Failed Attempt at Prostitution Is Not a Defense

It is no defense under 18 U.S.C. § 1591 that the prostitution which was intended by defendant was not accomplished.    See, e.g., United States v. Brooks, 610 F.3d 1186, 1197, n.4 (9th Cir. 2010) (upholding conviction for sex trafficking pursuant to 18 U.S.C. §1591(a) where one of the minor victims recruited to engage in prostitution ultimately never engaged in a commercial sex act.

B.   **Enticement and Coercion to Travel in Interstate Commerce to Engage in Prostitution (Count Two)**

      i.    Statute

Title 18 U.S.C. § 2422 (b) provides that:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

      i.    Elements

To sustain its burden of proof, the United States must establish the following:
***One***, the defendant used a facility or means of interstate commerce to persuade, induce, entice, or coerce a person to engage in prostitution or sexual activity;

***Two***, the person was under the age of 18; and

***Three***, the defendant believed the that the person was under the age of 18.

C.  **Use of Facilities of Interstate Commerce with Intent to Promote Prostitution (Count Four)**

      i.    Statute

Title 18 U.S.C. § 1952 (a)(3) provides that:

> (a)   Whoever knowingly travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to –
> (3) otherwise promote manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity.

      ii.    Elements

> To sustain its burden of proof, the United States must establish the following:
> ***One,*** the defendant knowingly traveled in interstate commerce or used any facility in interstate commerce;
>
> ***Two,*** that the defendant did so with the intent to promote manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of an unlawful activity; to wit prostitution; and
>
> ***Three,*** that the defendant did knowingly manage, establish, or carry on that unlawful activity; to wit prostitution.

## EVIDENTIARY ISSUES

1. <u>Age of the Victims</u>

Two of the charged offenses (Counts One and Two) include elements requiring proof that the victim was under the age of 18 at the time the offenses were committed and that the defendant knew this fact. The government intends to prove the age through testimony from the victims, as well as through a certified birth certificate. <u>See</u>, <u>Hilliard v. United States</u>, 121 F.2d 992, 996 (4th Cir. 1941)(to establish victim's age the government offered a certified copy of the birth certificate); <u>United States v. Austrew</u>, D.C.Md. 1962, 202 F.Supp. 816, <u>affirmed</u>, 317 F.2d 926 (birth certificate of girl, who was allegedly transported in interstate commerce for immoral purposes, was admissible to show that she was under eighteen, though girl's first and middle names were transposed on birth certificate, where it was properly sealed and certified).

2. <u>Photographs</u>

The government intends to introduce photographs during the trial. Under Federal Rule of Evidence 90l(a), testimony by a witness that a photograph fairly and accurately depicts

9

that scene at some relevant time is a sufficient basis for admission of the photograph. See United States v. Brannon, 616 F.2d 413, 416 (9th Cir.), cert. denied, 447 U.S. 908 (1980); Louis Vuitton S.A. v. Spencer Handbags Corp., 765 F.2d 966, 973-74 (2nd Cir. 1985) (and cases cited therein).

3. Reciprocal Discovery

To date, the government has provided a large amount of discovery to the defense. The government has requested reciprocal discovery, and has not received any discovery from the defendant. Should the defendant seek to introduce any evidence that should have been provided to the government as reciprocal discovery, the Court should exclude it pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

4. Presentation of Witnesses

The United States intends to present the evidence in this case in a generally sequential fashion. However, it may become necessary due to scheduling issues to call a witness out of order.

7. Outgoing Jail Calls

The government intends to present a substantial amount of evidence derived from the defendant's recorded out going phone calls made from the Lincoln County Correctional Facility. The facility has a policy that all out going inmate call are recorded in the ordinary course of business, with the exception of calls to attorneys who have entered their appearance on behalf of the defendants. There is an inmate guide reflecting that policy which is posted next to the inmate phone. Further at the beginning of all outgoing inmate calls, the following warning is provided to ]the inmate and the recipient of his calls, "This call is subject to recording and

10

monitoring".

The defendant engaged in a large volume of outgoing calls with friends, associates, family member and former prostitutes where she discussed witness intimidation, her current criminal conduct, and past acts of pimping, promoting prostitution and human trafficking. During these calls the defendant often states she should be careful about what she says as she knows that his calls are being recorded.

The calls are admissible as they may be intercepted without a warrant if one of the parties gives prior consent.  18, U.S.C. Section 2511(2)(c).  Since inmates are warned, the rules are posted adjacent to the inmate phone, and a warning is given at the beginning of each call, the inmate has impliedly consented to the monitoring.  United States v. Lucas, 499 F.3d 769, 780 (8th Cir. 2007), United States v. Horr, 963 F.2d 1124, 1126 (8th Cir. 1992).

8.      Impossibility

The defendant should also be barred from raising an impossibility defense at any stage of the trial.  The Eighth Circuit has long held that "factual impossibility" is not a recognizable defense to an attempt crime.  Eighth Circuit Model Criminal Jury Instructions 8.01 (2007) citing favorably United States v. Frazier, 560 F.2d 884, 888 (8th Cir. 1977) (recognizing that the would-be thief who attempts to pick an empty pocket has still committed an attempt crime). Likewise, here it matters not whether a victim had completed a sex "date" that the defendant had set-up for her.  What matters was the defendant's intent.  As stated above, the Eighth Circuit's definition of attempt requires (1) an intent to engage in criminal conduct, and (2) conduct constituting a "substantial step" toward commission of the intended offense which strongly corroborates the actor's criminal intent.  Thus, a defense of factual impossibility is foreclosed to

11

the defendant.

At the same time, the defendant should be barred from claiming that her attempt to recruit and entice a minor for a commercial sex act was legally impossible. In citing Frazier, the committee notes from Eight Circuit Model Criminal Jury Instructions 8.01 (2007) clearly explain that the defense of legal impossibly has such a narrow application that it would only apply in an instance where completion of the act would not constitute a crime.

> Legal impossibility refers to those situations in which the intended acts, even if successfully carried out, would not amount to a crime. Thus, attempt is not unlawful where success is not a crime, and this is true even though the defendant believes his scheme to be criminal.

Frazier, supra. Clearly, commercial sex with a minor prostitute is illegal. Therefore, the defendant should be barred from making such arguments at any stage of the trial.

## WITNESS EXCLUSION AND CASE AGENT DESIGNATION

The government will move for the exclusion of all witnesses until their testimony has been completed, pursuant to Fed. R. Evid. 615. The government will further move that Task Force Officers Jerry Cochran and Stephanie Stoehner be designated as the case agents and be exempt from the exclusion order, pursuant to Fed. R. Evid. 615.

## CONCLUSION

The foregoing is a summary of points the government anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the government respectfully requests leave to submit such further memoranda as may be necessary.

Respectfully submitted,
SAYLER A. FLEMING
United States Attorney

12

*Dianna R. Collins*
Dianna R. Collins, 59641MO
Assistant United States Attorney
111 South 10th Street, Rm.  20.333
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon attorney for defendant.

*/s/ Dianna R. Collins*
DIANNA R. COLLINS, 59641MO
Assistant United States Attorney